## THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**GLENN NORRIS**                                                         **PLAINTIFF**

**v.**                              **Case No. 4:18-cv-00337-KGB**

**KOHLER CO.**                                                          **DEFENDANT**

### OPINION AND ORDER

Before the Court is defendant Kohler Co.'s motion for summary judgment (Dkt. No. 23). Plaintiff Glenn Norris filed a response in opposition to the motion, and Kohler filed a reply to Mr. Norris's response (Dkt. Nos. 29, 36). For the following reasons, the Court grants the motion for summary judgment and dismisses with prejudice Mr. Norris's claims against Kohler.

### I.     Factual Background

Mr. Norris filed a complaint against Kohler, his former employer, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (Dkt. No. 1). In support of its motion, Kohler filed a statement of undisputed facts (Dkt. No. 23-2). Along with his response to the motion, Mr. Norris filed a statement of disputed facts (Dkt. No. 30) and a response to Kohler's statement of undisputed facts (Dkt. No. 31). Kohler, along with its reply, filed a response to Mr. Norris's statement of disputed facts (Dkt. No. 37). The following facts are taken from the parties' statements, unless otherwise indicated.

Mr. Norris became a Kohler associate when he applied for—and received—a production team lead position at Kohler's Sheridan, Arkansas, plant in or about 2015. Mr. Norris learned about the production team lead position when he saw an ad in the local paper. Shortly after Kohler hired Mr. Norris, he applied for and received a promotion to General Supervisor over the night

shift.  After Mr. Norris became General Supervisor over the night shift, Mike Mayo, Plant Manager, and Debbie Thompson, who worked in Human Resources, asked Mr. Norris to make a lateral move to day shift to become a General Supervisor over the Faucet Department.  Mr. Norris accepted and held this position until his termination.

Kohler hired Robert Landreth to replace Mr. Norris as General Supervisor on the night shift, and Mr. Landreth became Assistant Plant Manager in or about 2015, approximately one year later.  Although Mr. Norris alleges that he complained to Mr. Mayo and Ms. Thompson about Mr. Landreth getting the night-shift General Supervisor position, Mr. Norris does not know whether they mentioned his complaint to Joseph Higdon, who is identified in the record evidence as a former Quality Supervisor and later as Acting Production Manager - Faucets at Kohler, or Kerri Arguello, Human Resources Manager at Kohler.

Mr. Norris never used Kohler's EthicsPoint hotline, which was available for him to report violations and complaints.  Mr. Norris acknowledged receipt of the Ethics Policy.  Kohler also has Equal Opportunity and Respectful Workplace Policies that prohibit discrimination and harassment.

Mr. Norris started his own independent insurance business in or about January 2013.  Mr. Norris transitioned his insurance business to Primerica Insurance in or about August 2014.  When Mr. Norris switched to Primerica, he paid $99 to buy into the business.  Mr. Norris sells life insurance, variable annuities, indexed annuities, small business 401(k)s, mutual funds, and auto and home referral programs through Primerica.  Mr. Norris earns money from Primerica on commission calculated based on how long his customers stay on Primerica insurance.  Primerica has several tiers of insurance salespeople, and each representative's tier affects how much income he or she earns.

Since he bought into Primerica, Mr. Norris spent approximately 30 days as a Registered Representative and 30 to 90 days as a District Representative before becoming a Divisional Representative approximately three years ago.  As a Divisional Representative, if Mr. Norris recruits another person to sell insurance with Primerica, he gets the "commission spread" difference between their commission and his commission.  Mr. Norris's goal was to get to the highest level with Primera's structure—Senior National Sales Director—or to earn at least $100,000 annually with his insurance sales, both by writing his own business sales and recruiting others, so that he could capitalize on the commission spread.

At Mr. Norris's goal level, he would also get a portion of sales by those he recruited and the people his recruitees recruited.  Within this compensation structure, and with the goal of earning $100,000 annually, Mr. Norris sought referrals and also sold insurance directly to friends, coworkers, and family.  From 2014 to 2017, Mr. Norris sold insurance to approximately one to three new people per year and recruited approximately one to two new people to sell insurance with Primerica per year.  Approximately 25 to 45% of the new people he sold to or recruited from 2014 to 2017 were his coworkers at Kohler.  If people turned down his insurance-sales overtures, Mr. Norris sometimes approached them a second time if they had a change in circumstances, such as divorce or marriage.

Mr. Norris feels that he was discriminated against because he was not on the leadership team that attended Kohler's North American Leadership meeting in 2015 or 2016.  Mr. Norris did not ask to be included on the North American Leadership Team, and he does not know who made the decision not to include him.  In or about 2015 or 2016, a younger male in his mid-40s led an organic-spraying-process project (the "Spraying Process Project") that Mr. Norris wanted to lead. In or about 2015 to 2017, approximately three to four times each year, Vice President of Operations

Joseph Hnilicka and Director of Faucet Operations for the Americas Michael Oberlander came to visit the Sheridan plant and walked past Mr. Norris to talk to his production supervisor instead of Mr. Norris.  In 2017, Mr. Norris was not invited to attend a weekly Friday telephonic meeting with Mr. Oberlander, but Mr. Norris admits that he never asked to be included on the call.  Mr. Norris also alleges that Mr. Mayo called him the wrong name in 2017.  In 2017, Mr. Norris alleges that Josh Drumm, who was an engineer with an engineering degree which Mr. Norris did not have, led projects that Mr. Norris should have led, such as projects related to scrap reduction (the "Scrap Reduction Project") and the organic finishing process (the "Finishing Process Project").

The Scrap Reduction Project began at the end of 2016 and concluded by Spring 2017. When the Faucets Department's footprint changed in an engineering project (the "Footprint Project"), Ian Laughlin, the "top engineering guy," spoke with Wayne Stuckey, who is "3-5 years younger than Plaintiff," about the project.  Neither the Footprint Project, Scrap Reduction Project, Finish Process Project, nor the Spraying Process Project affected the money Mr. Norris earned, and Mr. Norris does not know whether he asked to get involved in any of these projects.  Mr. Norris does not know the specific employment backgrounds, certifications, or educational information of those ultimately assigned the Footprint Project, Scrap Reduction Project, Finish Process Project, and the Spraying Process Project, and he does not know what the decisionmakers considered in assigning these projects.  Ms. Arguello had no role in deciding whether Mr. Norris would work on these various projects.

In or about April or May 2017, Kohler corporate leadership came from Wisconsin to the Sheridan plant for a quarterly meeting.  In advance of this meeting, Mr. Norris alleges that he emailed Mr. Hnilicka to ask "when we would see more opportunities for African-Americans and women at the Sheridan plant."  Mr. Norris attended the quarterly meeting with Mr. Hnilicka.  At

this meeting, Mr. Norris alleges that Ms. Arguello and Mr. Hnilicka "stared him down" while he was in the middle row of a meeting attended by approximately 100 people (Dkt. No. 31, ¶ 38). Mr. Norris avers that Ms. Arguello looked at him, made eye contact, read his question, and then said, "if you see something that you want to apply for, tell someone." (*Id.*, ¶ 39). Mr. Norris does not know whether Ms. Arguello knew that he had sent in the question to Mr. Hnilicka. Kohler received an anonymous question regarding diversity that was addressed at the quarterly plant meeting.

After Mr. Mayo became Plant Manager in or about June 2017, Mr. Norris bid on a promotion to Production Manager—Faucets. Kohler did not select any employee to fill permanently the position in 2017 and cancelled the position requisition without permanently filling it at that time. Instead, Bill Armstrong selected Joseph Higdon—who was "in the same level" as Mr. Norris—to fill temporarily the position on an interim basis "until [Kohler] finished the interview process." (*Id.*, ¶ 44). Mr. Norris does not know what happened after Mr. Higdon's temporary placement in the position ended. Mr. Norris believes that his failure to be selected for this position was retaliatory and based on race discrimination.

Kohler's Job Posting Policy aligns with Mr. Norris's understanding of how Kohler posted jobs. Kohler generally posted jobs for a minimum of seven days on Company Bulletin Boards, which were located throughout the facility. In Summer 2017, Mr. Norris states he applied for a "BL-MOD" position which he did not receive. According to Kohler, Kohler did not have a "BL-MOD" position open in or about Summer 2017, but Kohler posted a Project Leader—Custom Finishing position in or about Summer 2017. Kohler believes that Mr. Norris is referring to that position. Mr. Norris does not know whether this position was ever posted or advertised anywhere. Mr. Norris never applied for this position and does not know the decisionmaker for the position.

Nevertheless, Mr. Norris alleges that he did not receive the BL-MOD position because of race and age discrimination and retaliation.  Mr. Norris believes that he was retaliated against because of the question he submitted before the April or May 2017 meeting about whether there would be more opportunities for women and African-Americans at the Sheridan plant.  Matt Smith, a Caucasian male who is "a little bit younger than Plaintiff" and a General Supervisor in the Plastics Division, received the position (*Id.*, ¶ 54).

In or about September 2017, Mr. Norris received an automated email inquiring how the interview process went for the Production Manager—Faucets position he applied for and did not receive.  He responded that he had not been interviewed, did not get the job, and was not happy with the process.  Mr. Norris did not mention anything about his race or age in his response to the automated email.

Mr. Norris gave additional "honest feedback" in response to a survey asking questions about management, but he does not know whether he mentioned anything about his race or his age in this survey.  Kohler hired a third-party vendor, Kenexa, to conduct this survey.  According to Kohler, Kenexa did not provide the results of this survey to Kohler management until January 2018, and the results were anonymous; Mr. Norris does not present record evidence to refute this.  Mr. Norris did not mention to Ms. Arguello in the management survey his April or May 2017 email to Mr. Hnilicka.

Mr. Norris was among the approximately 177 Kohler associates in Sheridan, Arkansas, selected for a random drug test under a standard operating procedure in the third quarter of 2017.  Mr. Norris's random drug test was scheduled for October 3, 2017.  Mr. Norris does not recall when his last drug test was before his random drug test in October 2017.

In 2015 or 2016, Mr. Norris specifically recalls recruiting Trish Shelton, a production team lead he supervised, to buy insurance from him, and he also asked her who she thought would be receptive to being a Primerica recruit or customer.

Mr. Higdon and Ms. Arguello suspended Mr. Norris on or about October 11, 2018.  Mr. Higdon and Ms. Arguello told Mr. Norris that people were complaining that he had shown favoritism to those who bought insurance from him.  Mr. Norris admits this is what he was told, but he denies that he showed any favoritism.

Andre Watkins was a machine operator who worked indirectly under Mr. Norris.  He reported to Trish Shelton, who reported to Wayne Stuckey, who in turn reported to Mr. Norris.  Kohler maintains that Mr. Watkins told Kohler that Mr. Norris had asked him and his wife to purchase insurance and that Mr. Watkins had "had people come and tell him that [Mr. Norris] keeps trying to pressure them to buy insurance." (*Id.*, ¶ 74).  Also according to Kohler, Mr. Watkins told Kohler that Mr. Norris "talks about insurance to people weekly." (*Id.*, ¶ 75).  Mr. Norris admits that he talked to Kohler employees weekly about his insurance business, but he denies that he ever pressured anyone to buy insurance or that anyone had gone to Mr. Watkins to discuss Mr. Norris's insurance business.

Al Amos, a Kohler employee, told Kohler that Mr. Norris asked if he would be interested in selling insurance and whether Mr. Amos would be interested in Mr. Norris's department.  Mr. Norris is not aware of Mr. Amos telling Kohler anything other than what is in his statement.

Kohler contends that Shania McKinnon, a Kohler employee, told Kohler that Mr. Norris talked about selling insurance all the time and that he told her that she needed to "sign up so that she could sit in an office just like him." (*Id.*, ¶ 78).  Mr. Norris denies this.  Mr. Norris asked Darrin

Brazil, a Kohler employee, to buy insurance from him.  Kohler contends Mr. Norris did this at least twice, and although Mr. Norris admits this, he maintains that he did not ask "numerous times."

Ms. McKinnon and Mr. Brazil worked side-by-side, and Mr. Norris believes that they conspired to provide Kohler false statements against him.  Mr. Norris believes that Ms. McKinnon was disgruntled with him because she had asked to be off every Friday to go to school, and he referred her to Human Resources instead of granting her request.  Mr. Norris believes that Mr. Brazil was disgruntled with him because he refused to give him a pay raise.  Mr. Norris does not know whether Human Resources knew that Ms. McKinnon and Mr. Brazil were disgruntled with him.

Though the reasons for his suspension and termination are disputed, Kohler suspended Mr. Norris on October 11, 2017, and terminated his employment on October 23, 2020.  In this lawsuit, Mr. Norris claims that he was terminated because of race, age, and in retaliation for alleged protected activity.

Kohler reposted the Production Manager—Faucets position in or about June 2018.  Mr. Norris did not apply for the position.  Mr. Norris is not aware of who made the decision to reopen and rebid the position and does not know what they considered during their decision-making process.  Mr. Norris does not know whether Kohler permanently filled this position and was not aware of it being reposted in June 2018.  Christopher Smith, a 46-year-old Caucasian male, received the position.  Mr. Norris filed his Equal Employment Opportunity Commission ("EEOC") Charge on January 5, 2018.

## II.      Governing Law

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

The party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). If the moving party carries its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at 586, 587). "[T]o survive a motion for summary judgment on a discrimination claim, a plaintiff must present admissible evidence directly indicating unlawful discrimination, or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas*." *Farver v. McCarthy*, 931 F.3d 808, 811-12 (8th Cir. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

### III.     Analysis

Mr. Norris asserts race discrimination claims under Title VII, age discrimination claims under the ADEA, and retaliation claims based on alleged protected activity.  The Court examines each of his claims.

### A.     Timeliness Of Claims

As a preliminary matter, Kohler asserts that, for Mr. Norris's claims to be timely, he had to file an EEOC Charge within 180 days of the alleged unlawful employment practice.  Mr. Norris filed his EEOC Charge on January 8, 2018 (Dkt. No. 1, at 4-5).  Therefore, events occurring before July 12, 2017, are time-barred according to Kohler.  In his response, Mr. Norris does not address this argument.  The Court will consider together exhaustion under Title VII and the ADEA, although the Court is mindful that the EEOC enforcement mechanisms for Title VII and the ADEA differ in some respects.  *See Fed. Exp. Corp. v. Holowecki,* 552 U.S. 389, 393 (2008).

In order to assert a Title VII or ADEA claim, Mr. Norris must have first exhausted his administrative remedies by filing a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1)(B); *see Hutson v. Wells Dairy, Inc.,* 578 F.3d 823, 825–26 (8th Cir. 2009) (discussing together Title VII and ADEA charge filing requirements); *Shelton v. Boeing Co.,* 399 F.3d 909, 912 (8th Cir. 2005) (discussing ADEA charge filing requirements).

In his EEOC Charge, Mr. Norris specifically complains of race discrimination, age discrimination, and retaliation.  In response to questions that asked the earliest and latest date of the alleged discrimination, Mr. Norris responded October 23, 2017, to both of those questions. However, in his EEOC Charge, Mr. Norris claims, among other things, that he complained in May 2017 of a lack of diversity, applied in June 2017 for a promotion to AFO Faucet Manager but was

not selected, was denied in August 2017 the opportunity to apply for a promotion to BL-MOD Manager, complained in September 2017 of a lack of diversity in a management survey, was suspended on October 11, 2017, and was terminated on October 23, 2017 (Dkt. No. 1, at 4-5).

To the extent Mr. Norris intends to invoke the continuing violation theory in an effort to make his allegations timely, the Supreme Court has explained that the continuing violation theory does not encompass discrete acts of discriminatory or retaliatory conduct. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110–15 (2002) (Title VII context). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. "Each discrete act is a different unlawful employment practice for which a separate charge is required." *Richter v. Advance Auto Parts, Inc.,* 686 F.3d 847, 851 (8th Cir. 2012) (citing *Morgan,* 536 U.S. at 114); *see also Hutson v. Wells Dairy, Inc.,* 578 F.3d 823, 826 (8th Cir. 2009) (applying *Morgan* to Title VII and ADEA claims and stating that "[a] termination is a discrete act, not a continuing violation."); *Betz v. Chertoff,* 578 F.3d 929, 937-38 (8th Cir. 2009) (also applying *Morgan* in the ADEA context).

The Court understands that there are different standards for exhausting hostile work environment claims, *Morgan*, 536 U.S. at 115, 118, but Mr. Norris does not allege hostile work environment claims.

For these reasons, the Court agrees with Kohler that prior discrete acts outside of the 180-day time limit are not actionable. *Morgan,* 536 U.S. at 115 ("All prior discrete discriminatory acts

are untimely filed and no longer actionable."). Claims arising from events occurring before July 12, 2017, are time-barred. Mr. Norris's claims based on an alleged failure to promote in June 2017 are time-barred, as a failure-to-promote claim is an easily identifiable discrete act to which the continuing violation doctrine does not apply and for which a separate charge is required. *Morgan,* 536 U.S. at 113–14; *Richter,* 686 F.3d at 851. Also time-barred are any claims purportedly based on Mr. Norris's alleged exclusion from the North American Leadership Team in 2015 or 2016, not being able to lead the Spraying Process Project in 2015 or 2016, being allegedly ignored by Vice President of Operations Mr. Hnilicka and Director of Faucet Operations for the Americas Mr. Oberlander on their quarterly visits to the Sheridan plant, not leading the Scrap Reduction Project that ended in Spring 2017, and being allegedly "stared down" by corporate management in April or May 2017.

### B.      Mr. Norris's Race And Age-Discrimination Claims

The Court applies a similar legal analysis to both Mr. Norris's race and age discrimination claims, so the Court discusses those claims together. Kohler is entitled to summary judgment in its favor on each of these claims for the following reasons.

### 1.      *McDonnell Douglas* Burden-Shifting Framework

As for Mr. Norris's remaining timely discrimination claims, those claims may survive Kohler's motion for summary judgment in one of two ways. First, Mr. Norris "may present admissible evidence directly indicating unlawful discrimination, that is, evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Humphries v. Pulaski Cty. Special Sch. Dist.*, 580 F.3d 688, 692 (8th Cir. 2009) (internal quotation marks and citation omitted). Alternatively, if Mr. Norris lacks

such evidence of discrimination, he may survive Kohler's motion for summary judgment by presenting evidence "by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, [411 U.S. 792, 802–04 (1973)]." *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008). Because Mr. Norris did not present direct evidence of race or age discrimination, the Court analyzes his discrimination claims under the *McDonnell Douglas* burden-shifting framework. *See Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011).

The ADEA has similar elements to Title VII for any claim for discrimination. *Grant v. City of Blytheville, 841 F.3d 767,* 773 (8th Cir. 2016). Although the Eighth Circuit Court of Appeals has applied *McDonnell Douglas* to ADEA claims when addressing them along with other discrimination claims, it is unclear whether *McDonnell Douglas* technically applies to the ADEA because the ADEA has a "but-for" causation standard rather than the mixed motives standard used in other statutes. *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794-95 (8th Cir. 2019) (citing *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1083 (8th Cir. 2013) (noting the different standards)). The Eighth Circuit has determined though that a plaintiff who fails to meet the lower standard of Title VII necessarily fails to meet the ADEA's causation standard as well. *Heisler*, 931 F.3d at 794-95; *Ridout*, 716 F.3d at 1083. Accordingly, the Court analyzes the claims first in the light of the *McDonnell Douglas* framework and determines that it need not analyze the ADEA's separate burden if no claim survives the *McDonnell Douglas* analysis.

*McDonnell Douglas* and subsequent decisions have "established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Under the three-part *McDonnell Douglas* burden-shifting framework, Mr. Norris bears the initial burden of establishing a *prima*

*facie* case of employment discrimination.  *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012).  To establish a *prima facie* case for discrimination, "a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)."  *Id.* at 853–54 (citations omitted).  For the purposes of this motion, Kohler does not challenge that Mr. Norris is a member of a protected class under Title VII or the ADEA.  If Mr. Norris establishes the remaining elements of a *prima facie* case, the burden of production shifts to Kohler to articulate a legitimate, non-discriminatory reason for its actions.  *See Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011).  Finally, if Kohler provides such a reason, the presumption of discrimination disappears, and the burden returns to Mr. Norris to prove that Kohler's reason was mere pretext for discrimination.  *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 139 (2000).

### 2.      Alleged Adverse Employment Actions

As an initial matter, Kohler argues that many of the actions about which Mr. Norris complains do not constitute actionable "adverse employment actions" as a matter of law.  Kohler contends that Mr. Norris identifies only three actionable adverse employment actions:  (1) Kohler's failure to promote Mr. Norris to the BL-MOD position; (2) Kohler's failure to promote Mr. Norris to the Production Manager – Faucets position in June 2018; and (3) Kohler's termination of Mr. Norris's employment on October 27, 2018.  As for each of these claims, Kohler argues that Mr. Norris's claims fail for distinct reasons.

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.  This might include termination, cuts in pay or benefits, and

changes that affect an employee's future career prospects." *Clegg v. Ark. Dep't of Corr.,* 496 F.3d 922, 926 (8th Cir. 2007) (internal marks and quotations omitted).  "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Duffy v. McPhillips,* 276 F.3d 988, 991-92 (8th Cir. 2002).  "Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Clegg,* 496 F.3d at 926. "Lesser actions than demotion, suspension, and termination can be adverse employment actions if their cumulative effect causes an employee to suffer 'serious employment consequences' that adversely affect or undermine his position." *Shockency v. Ramsey Cnty.,* 493 F.3d 941, 948 (8th Cir. 2007).

In response to Kohler's motion for summary judgment, Mr. Norris does not address directly this argument.  Instead, he opts to focus his response on the three purportedly actionable adverse employment actions identified by Kohler.  The Court agrees with Kohler that Mr. Norris has not made a sufficient case to establish that certain conduct about which he complains constitutes actionable adverse employment action.  As a result, the Court will focus on the same three events that Mr. Norris addresses in his response when examining whether any of Mr. Norris's claims survive summary judgment.

### a.   Mr. Norris's Claim For Failure-to-Promote To The BL-MOD Position

With regard to Mr. Norris's claims based on Kohler's alleged failure to promote him to the BL-MOD position (later identified as a Project Leader – Custom Finishing position) in or about the Summer 2017, Mr. Norris has not met his *prima facie* burden under Title VII or the ADEA because the summary-judgment record demonstrates that Mr. Norris did not apply for or make every reasonable attempt to convey to Kohler his interest in the position.  The Court recognizes that failure to apply formally for a position does not bar a plaintiff from establishing a *prima facie*

case, as long as the plaintiff "made every reasonable attempt to convey his interest in the job to the employer." *Chambers v. Wynne Sch. Dist.,* 909 F.2d 1214, 1217 (8th Cir. 1990) (quotation omitted). "[F]ormal application will not be required to establish a prima facie case if the job opening was not officially posted or advertised and either (1) the plaintiff had no knowledge of the job from other sources until it was filled, or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application." *Id.*

Based on the record evidence before the Court, construing all reasonable inferences in favor of Mr. Norris, the Court determines that Mr. Norris was aware that, in the Summer 2017, Kohler had a policy of posting open positions for at least seven days on bulletin boards in the plant. Mr. Norris concedes that he did not formally apply for the BL-MOD position or make any effort to convey his interest in the position to Kohler apart from expressing interest in the position to Mr. Drumm on one occasion, after the position had been filled. Mr. Norris's actions fall short of the requisite standard; he did not make every reasonable attempt to convey his interest in the job to the employer. Therefore, Mr. Norris's claim for failure to promote to the BL-MOD position fails as a matter of law.

> **b.    Mr. Norris's Claim For Failure-To-Promote To Production Manager – Faucets**

Mr. Norris also challenges Kohler's alleged failure to promote him to the Production Manager – Faucets position. Based on record evidence, this position first became available in June 2017. As explained elsewhere in this Order, Mr. Norris's claim arising from events in June 2017 is time-barred because the decision not to promote Mr. Norris was made more than 180 days before he filed his EEOC Charge on January 8, 2018.

Even if Mr. Norris's claim regarding the June 2017 decision was not time barred, Mr. Norris has not met his *prima facie* burden on this claim. After initially posting a position for a

permanent Production Manager – Faucets, Kohler decided that the position would be temporary. Mr. Higdon was subsequently chosen to fill the temporary position.  By Mr. Norris's own admission, Mr. Higdon was "in the same level" as him, and "[s]imilar qualifications do not raise an inference of discrimination," *Torgerson v. City of Rochester*, 643 F.3d 1031, 1049 (8th Cir. 2011).

The undisputed record evidence is that Kohler later decided to convert the temporary position into a permanent one and re-posted the position in June 2018.  To the extent Mr. Norris attempts to bring discrimination claims based on these events, the undisputed record evidence is that Mr. Norris did not apply or otherwise express interest in the permanent position.  As a result, he fails to state a *prima facie* case based on the June 2018 posting.  *See Chambers*, 909 F.2d at 1217.

### c.    Mr. Norris's Claim For Wrongful Termination

Mr. Norris also cites his termination as an actionable adverse employment action.  Based on the undisputed record evidence, construing all reasonable inferences in favor of Mr. Norris and assuming without deciding that Mr. Norris has met his *prima facie* burden on this claim, Mr. Norris cannot rebut Kohler's legitimate, non-discriminatory reason for his termination.  The undisputed record evidence demonstrates that Kohler believed, based on complaints it received, that Mr. Norris was allegedly abusing his positional power when advancing his personal insurance business by selling insurance to his co-workers, reportedly violating the company's Ethics Policy in the process, and purportedly threatening consequences for those co-workers who declined to participate in his personal insurance business.

Assuming without deciding for purposes of resolving Kohler's pending motion for summary judgment that Mr. Norris can establish a *prima facie* case of discrimination based on his

17

termination, Kohler articulates a legitimate, nondiscriminatory reason for its termination of Mr. Norris's employment.  The burden on Kohler to articulate a legitimate, non-discriminatory justification for its conduct is not onerous.  *Bone v. G4S Youth Servs., LLC,* 686 F.3d 948, 954 (8th Cir.2012).  When reviewing the employer's articulated reasons for discharge, and the plaintiff's refutation thereof, this Court's "inquiry is limited to whether the employer gave an honest explanation of its behavior."  *Wilking v. County of Ramsey,* 153 F.3d 869, 873 (8th Cir.1998) (quoting *Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 973 (8th Cir.1994)).  "Accordingly, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."  *Id.* (internal quotations and citations omitted).

Mr. Norris makes various arguments attempting to dispute Kohler's legitimate, non-discriminatory reason for his termination, each of which the Court rejects.  First, Mr. Norris claims that Kohler conducted a "secretive" investigation that this Court should not credit.  Next, he attempts to discredit two of the co-workers who accused him of abusing his positional power, asserting that these two employees were newly hired, wanted to strike back at Mr. Norris and that their allegations should not have been believed by Kohler.  Mr. Norris also asserts that other employees, not in the protected class, advance personal businesses by selling to co-workers and were not terminated as a result.  In addition, Mr. Norris attempts to point to other potential comparators whom he contends engaged in worse conduct but were not terminated as a result. These are the same arguments Mr. Norris advances in support of his pretext arguments, and the Court addresses and rejects these arguments for reasons explained elsewhere in this Order.

Because Kohler has articulated a legitimate, nondiscriminatory reason to terminate Mr. Norris, "the presumption of discrimination disappears," and the burden of persuasion shifts back

to Mr. Norris "to prove that the proffered justification is merely a pretext for discrimination." *Id.* His burden to show a genuine issue of material fact regarding pretext "merges with the ultimate burden of persuading the court that [he was] the victim of intentional discrimination." *Torgerson v. City of Rochester,* 643 F.3d 1031, 1046 (8th Cir.2011) (en banc) (citing *Texas Dep't of Cmty. Affairs v. Burdin*e, 450 U.S. 248, 256 (1981)).  Further, as discussed elsewhere in this Order, to succeed in proving age discrimination, he must show, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action.  *Gibson,* 670 F.3d at 856 (quoting *Haigh,* 632 F.3d at 468).

The Eighth Circuit has explained that "[t]here are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext." *Torgerson*, 643 F.3d at 1047.  First, "[a] plaintiff may show that the employer's explanation is unworthy of credence because it has no basis in fact.  Alternatively, a plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer." *Id.*  "In determining whether a plaintiff has met its burden with respect to pretext in a summary judgment motion, a district court is prohibited from making a credibility judgment or a factual finding from conflicting evidence." *Yates v. Rexton, Inc.,* 267 F.3d 793, 800 (8th Cir. 2001).

In order to establish pretext, Mr. Norris attempts to cast doubt on Kohler's explanation, but he stops short of arguing that Kohler's explanation is unworthy of credence because it has no basis in fact.  First, Mr. Norris claims that Kohler conducted a "secretive" investigation that this Court should not credit.  Mr. Norris does not assert that Kohler ever shifted significantly its explanation for his termination.  *See EEOC v. Trans States Airlines, Inc.,* 462 F.3d 987, 995 (8th Cir.2006) (contrasting a situation with two completely different explanations for the termination, which would be evidence of pretext, with a situation where minor discrepancies appeared in a consistent

explanation of why the plaintiff was fired).  To the extent Mr. Norris attempts to argue that Kohler deviated from its policies by allowing others allegedly to promote outside businesses and that this is a basis for establishing pretext, he fails to submit record evidence supporting this argument.  *See Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1052 (8th Cir. 2006).  Kohler states that it believed Mr. Norris violated Kohler's policies purportedly by taking advantage of his position to influence Kohler employees to buy or sell insurance and that Kohler received several complaints about this alleged behavior.  Mr. Norris has put forward no record evidence that other Kohler employees leveraged their positions at Kohler to influence other employees to engage with their outside businesses nor that Kohler received complaints about such behavior.  With respect to the nature of the investigation conducted by Kohler, "[a]n employer can certainly choose how to run its business, including not to follow its own personnel policies regarding termination of an employee or handling claims of discrimination, as long as it does not unlawfully discriminate in doing so." *McCullough v. Univ. of Ark. for Med. Scis.,* 559 F.3d 855, 863 (8th Cir. 2009).  Nothing in the record evidence shows that Kohler was motivated by race or age in the way it ran its investigation into complaints Kohler received regarding Mr. Norris.

Second, Mr. Norris also attempts to discredit two of the co-workers who accused him of abusing his positional power, asserting that these two employees were newly hired, wanted to strike back at Mr. Norris, and their allegations should not have been believed by Kohler.  Mr. Norris offers no evidence that his two co-workers did not accuse him of abusing his positional power or that this was not Kohler's impression following its investigation.  On this point, Mr. Norris forcefully argues that he was not, in fact, abusing his positional power to advance his personal insurance business by assigning favorable and unfavorable shifts to those who bought and those who refused to buy his insurance, respectively.  However, Mr. Norris has not pointed to

any evidence that Kohler did not honestly believe the complaints made against him by his co-workers or the results of the company's internal investigation, which concluded that Mr. Norris was leveraging his position of authority to influence employees to buy or sell insurance from him. The question before the Court is whether Mr. Norris was the victim of racial or age discrimination when terminated.  It is not the Court's role to determine whether Mr. Norris was, in fact, guilty of abusing his positional power.

Instead of presenting evidence that his two co-workers did not accuse him of abusing his positional power or that this was not Kohler's impression following its investigation, Mr. Norris argues that there are reasons Kohler should not have believed these two co-workers.  None of these reasons implicate alleged race or age discrimination, so the Court defers to Kohler with respect to the scope and outcome of its investigation.  Mr. Norris has not demonstrated pretext on this basis. *Cf. Edmund v. MidAmerican Energy Co.,* 299 F.3d 679, 685–86 (8th Cir. 2002) ("Employers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices.  Federal courts do not sit as 'super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.'" (quoting *Cronquist v. City of Minneapolis,* 237 F.3d 920, 928 (8th Cir.2001))); *see also Fercello v. Cnty. of Ramsey,* 612 F.3d 1069, 1082 (8th Cir. 2010) ("[E]ven if [the employer's] overall assessment of [the employee] was incorrect, this does not entitle [the employee] to a judgment on the pretext issue, particularly because there is no evidence that [the employer's] assessment of [the employee] was not honest." (citing *Dixon v. Pulaski Cnty. Special Sch. Dist.,* 578 F.3d 862, 869 (8th Cir. 2009))).

Third, Mr. Norris asserts that other employees, not in the protected class, advanced personal businesses by selling to co-workers but were not terminated as a result.  He also claims

that employees who engaged in more serious conduct were not terminated as a result, citing Sam Green and Greg Matheny.  The Eighth Circuit has held that, "[a]t the pretext stage, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one."  *Bone*, 686 F.3d at 956 (internal quotation omitted).  A plaintiff "must show that she and the employees outside of her protected group were similarly situated in all relevant respects." *Id.* (internal quotation omitted).  The potential comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  *Id.* (quoting *Clark v. Runyon,* 218 F.3d 915, 918 (8th Cir.2000)).  Finally, "[t]o be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness."  *Id.* (quoting *Rodgers v. U.S. Bank, N.A.,* 417 F.3d 845, 851 (8th Cir. 2005)).

Mr. Norris does not assert that these other employees, not in the protected class, who advanced personal businesses by selling to co-workers were accused by co-workers of abusing their positional power when engaging in these transactions.  The record evidence before the Court demonstrates that Mr. Norris was accused of this, which sets Mr. Norris apart and defeats his attempt to rely upon these purported comparators at the pretext stage.  As for Mr. Norris's argument regarding differential treatment of Mr. Green and Mr. Matheny, Mr. Norris includes insufficient record evidence to establish at this stage that these individuals "dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  *Bone*, 686 F.3d at 956.  Although, Mr. Norris recites in filings what he contends happened with Mr. Green and Mr. Matheny, he submits no competent record evidence to the Court establishing these facts.  *See Bearden v. Int'l Paper Co.,* 529 F.3d 828, 832 (8th Cir. 2008) ( "Plaintiff must offer more than speculation, conjecture, or fantasy in

support of claims at summary judgment stage") (citation omitted); *Davenport v. Riverview Gardens Sch. Dist.,* 30 F.3d 940, 945 (8th Cir. 1994) (affirming summary judgment on race-discrimination claims where plaintiff presented no evidence other than his own unsubstantiated allegations in deposition); *Cherry v. Ritenour School District*, 361 F.3d 474, 479–80 (8th Cir. 2004) (inadmissible hearsay and cannot be used to avoid summary judgment).

In this case, even when the Court credits Mr. Norris's record evidence and draws all reasonable inferences from the record in his favor, the Court concludes that Mr. Norris has not met his burden of demonstrating a genuine issue of material fact on pretext.  Therefore, Mr. Norris has not met his burden of proving that Kohler's reason for his termination was mere pretext for discrimination.  *See Reeves*, 530 U.S. 139.

### C.      Mr. Norris's Retaliation Claim

To establish retaliation under Title VII or the ADEA, Mr. Norris must show that:  (1) he engaged in statutorily protected activity; (2) an adverse employment action was taken by Kohler against him; and (3) that the protected conduct was the but-for cause of the adverse action.  *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 551 (8th Cir. 2013) (citing *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)) (Title VII); *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176 (2009); *Porter v. City of Lake Lotawana*, 651 F.3d 894, 898 (8th Cir. 2011) (ADEA). Retaliation claims are also considered under the shifting burden of production of the *McDonnell Douglas* framework.  *See Green*, 459 F.3d at 914; *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2005).

In support of his retaliation claim, Mr. Norris contends that he engaged in allegedly protected activity on three occasions:  (1) in an e-mail he sent to Mr. Hnilicka asking "when we would see more opportunities for African-Americans and women at the Sheridan plant"; (2) in a

September 2017 response to an automated e-mail about the Production Manager – Faucets hiring process indicating that he had not been interviewed and was unhappy with the process; and (3) when providing "honest feedback" to an anonymous survey asking questions about management. Kohler challenges whether any of these acts constitute sufficient protected activity to state a retaliation claim.  Mr. Norris claims that, in response to these allegedly protected actions, he was retaliated against by Kohler in three actions:  (1) his failure to be promoted, (2) his random drug test, and (3) his termination.

Title VII prohibits retaliation by employers against employees who engage in protected conduct, which includes "either opposing an act of discrimination made unlawful by Title VII ('the opposition clause'), or participating in an investigation under Title VII ('the participation clause')."  *Hunt v. Neb. Pub. Power Dist.,* 282 F.3d 1021, 1028 (8th Cir. 2002).  The opposition clause protects an employee against discrimination for opposing an unlawful employment practice. *Gilooly v. Mo. Dep't of Health and Senior Servs.,* 421 F.3d 734, 741–42 (8th Cir. 2005).  The Eighth Circuit has interpreted this provision more broadly than a literal reading would suggest, finding that protected activity includes more than filing a formal charge of harassment.  *Id.*  Internal complaints or informal complaints to superiors are also protected activity under Title VII, *Gagnon v. Sprint Corp.,* 284 F.3d 839, 854 n.4 (8th Cir. 2002), *abrogated on other grounds by Desert Palace v. Costa,* 539 U.S. 90 (2003), as is "expressing a belief that the employer has engaged in discriminatory practices."  *Buettner v. Arch Coal Sales Co.,* 216 F.3d 707, 714 (8th Cir. 2000) (reporting supervisor's comment that "women and minorities don't belong in [this] business" was protected act of opposition).  Although Title VII protects an employee contesting what he or she reasonably believes to be an unlawful employment practice, it does not "insulate an employee from

discipline for violating the employer's rules or disrupting the workplace." *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999).

### 1.    Sufficient Protected Activity

To constitute protected activity sufficient to satisfy the first element of a retaliation claim, the alleged conduct about which the plaintiff complained must have been conduct that a reasonable person could have found violated Title VII, that is, the plaintiff must have complained about conduct that could reasonably be found to be discriminatory or to constitute discrimination, in other words conduct so severe or pervasive as to alter a term or condition of employment. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268 (2001) (per curiam); *Curd v. Hank's Discount Fine Furniture, Inc.,* 272 F.3d 1039, 1041 (8th Cir. 2001). "[N]ot every complaint garners its author protection under Title VII." *Broderick v. Donaldson,* 437 F.3d 1226, 1232 (D.C.Cir. 2006).

To invoke the benefits and protections of Title VII, "the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Id.* (holding that a memo complaining of "embarrassing, humiliating and downright insulting" treatment failed to allege adequately discrimination and thus was not a protected activity). Simply making a complaint of unfair treatment as to someone who happens to be in a protected class is insufficient without something tying that complaint to unlawful discrimination. *See Pope v. ESA Servs., Inc.,* 406 F.3d 1001, 1010 (8th Cir. 2005) (where plaintiff claimed he was fired when he observed that there were no black employees in a particular management position, comments were not sufficient to demonstrate opposition to an unlawful employment practice because plaintiff did not attribute the absence of black manager to racial discrimination), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc); *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028-29 (8th Cir. 2002) (finding that the plaintiff did not engage in protected activity for the

purpose of her federal retaliation claim where she complained that her employer failed to give her a raise or a promotion, but did not attribute this failure to sex discrimination); *Genosky v. Minnesota,* 244 F.3d 989, 991-92 (8th Cir. 2001) (where female employee complained of unfair treatment but could not remember if she attributed the unfair treatment to gender discrimination, she could not establish opposition to an unlawful employment practice because she did not complain of unlawful discrimination); *Rone v. U.S. Sprint,* 49 Fed.Appx. 659 (8th Cir. 2002) (unpublished per curiam) (where company newsletter stated plaintiff's training program targeted welfare recipients and recovering drug addicts, her complaint of offense did not constitute opposing an act of discrimination even though program was composed entirely of minorities because plaintiff failed to attribute her offense to racial discrimination).

In none of the three allegedly protected actions did Mr. Norris allege that his complaint or feedback to Kohler was based on unlawful discrimination. *See Broderick*, 437 F.3d at 1232. Mr. Norris's email to Mr. Hnilicka, which did explicitly mention the lack of African-Americans and women in leadership at Kohler's Sheridan plant, did not allege that this lack of diversity in leadership was due to discrimination or unlawful action. *See Pope,* 406 F.3d at 1010; *Hunt*, 282 F.3d at 1028-29. None of Mr. Norris's complaints were based upon conduct that could reasonably be found to be discriminatory or to constitute discrimination. Therefore, the complaints identified by Mr. Norris are not protected activity sufficient to satisfy the first element of a retaliation claim.

## 2.   Actionable Adverse Employment Action

Even if Mr. Norris engaged in protected activity sufficient to state a claim for retaliation, he still must show that he suffered "an adverse employment action" and that "the protected action was the but-for cause of the adverse action." *Bennett*, 721 F.3d at 551. Mr. Norris has identified three allegedly adverse employment actions in response to his assertedly protected action: (1) his

October 2017 drug test, (2) Kohler's failure to promote him to the BL-MOD or Production Manger – Faucets positions, and (3) and his termination. Of these actions by Kohler, the Court finds insufficient evidence to consider Mr. Norris's drug test an adverse employment action sufficient to state a claim of retaliation.

"The materially adverse action prong 'is objective, requiring us to consider whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions.'" *Weger v. City of Ladue,* 500 F.3d 710, 726 (8th Cir. 2007) (quoting *Carrington v. City of Des Moines,* 481 F.3d 1046, 1050 (8th Cir. 2007)). Mr. Norris was selected for the random drug screen on or around October 3, 2017. Mr. Norris has asserted that this drug test was a targeted action by Kohler to find reason to terminate him. However, Mr. Norris has put forward no record evidence to show that he was individually selected to be tested nor that he suffered any materially adverse action arising from this drug test. While submission to a drug test may itself be an adverse action, Mr. Norris does not dispute that approximately 117 other Kohler employees at the Sheridan location were randomly selected for drug testing that week. Further, he has not identified any evidence beyond allegations that his selection was anything other than random. In sum, there is no record evidence beyond Mr. Norris's assertions suggesting that the drug test was a materially adverse action in response to Mr. Norris's allegedly protected action. *See Tatum v. City of Berkeley*, 408 F.3d 543, 551 (8th Cir. 2005) ("To the extent they contend that the drug testing itself was an adverse employment action, plaintiffs have identified no evidence from which the jury reasonably could have concluded that the drug testing was conducted in a racially discriminatory manner.")

### 3.     Demonstrating But-For Causation

Even if Mr. Norris engaged in protected activity and suffered an adverse employment action sufficient to state a *prima face* claim of retaliation, he fails to demonstrate the but-for causation required for the claim.   As an initial matter, an employer must have "actual or constructive knowledge of the protected activity in order to establish a prima facie case of retaliation."  *Buettner,* 216 F.3d at 715.  Then, to establish the "causal connection," the Eighth Circuit has explained:

> To prove a causal connection, [the plaintiff] must demonstrate the defendants' "retaliatory motive played a part in the adverse employment action."  *Kipp v. Mo. Highway & Transp. Comm'n,* 280 F.3d 893, 896–97 (8th Cir. 2002) (quotation omitted).  Evidence giving rise to an inference of retaliatory motive on the part of the employer is sufficient to establish the requisite causal link.  *Id.* at 897.  "An inference of a causal connection between [protected conduct] and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation."  *Wallace v. DTG Operations, Inc.,* 442 F.3d 1112, 1119 (8th Cir. 2006) (citation omitted).

*Thomas v. Corwin,* 483 F.3d 516, 531 (8th Cir. 2007); *see also Wells,* 469 F.3d at 702 ("'A gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive'") (quoting *Hesse v. Avis Rent A Car Sys., Inc.,* 394 F.3d 624, 633 (8th Cir. 2005)).

Further, where the only connection between the protected activity and the adverse action is time, and that connection is only a weak one, that may not be enough to establish the third element of the plaintiff's *prima facie* case of retaliation.  *See Thompson v. Bi–State Development Agency,* 463 F.3d 821, 826 (8th Cir. 2006).  As the Eighth Circuit Court of Appeals has explained:

> Although we have opined that the "timing of [a] termination can be close enough to establish causation in a prima facie case," *Haas v. Kelly Servs., Inc.,* 409 F.3d 1030, 1037 (8th Cir. 2005), we have repeatedly stated that "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation," *Kiel v. Select*

28

*Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999); *see also Haas,* 409 F.3d at 1037.  Furthermore, "[o]ur recent cases have, in our view, made clear that a 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory discharge."  *Kipp v. Mo. Highway & Transp. Comm'n,* 280 F.3d 893, 897 (8th Cir. 2002).

*Thompson,* 463 F.3d at 826; *accord Green v. Franklin Nat'l Bank of Minneapolis,* 459 F.3d 903, 915 (8th Cir. 2006) (noting that Eighth Circuit cases "create a complicated picture" concerning the role of timing in retaliation claims).

A lack of causal connection can also be "reinforced" by undisputed evidence of customer or co-worker complaints against the plaintiff.  *Wells,* 469 F.3d at 702.  Similarly, other intervening events between protected activity and adverse action may "erode" any causal connection suggested by temporal proximity between the protected activity and the alleged adverse action.  *Cheshewalla,* 415 F.3d at 852.

With respect to any allegation that Kohler's failure to promote Mr. Norris to BL-MOD was retaliatory, the undisputed record evidence is that Mr. Norris was aware of Kohler's job-posting policies at the time and did not submit an application for the position.  That event defeats any alleged causation sufficient to support a retaliation claim based on Mr. Norris's alleged failure to receive the BL-MOD position.  Furthermore, Mr. Norris admitted to not knowing who made the decision to promote Mr. Smith to BL-MOD, so Mr. Norris cannot show through record evidence that the decisionmaker knew about Mr. Norris's alleged protected activity prior to making a decision regarding the BL-MOD position.

In regard to Mr. Norris's claim that Kohler's failure to promote him to Production Manager – Faucets constituted retaliation, based on record evidence, this position first became available in June 2017.  As explained elsewhere in this Order, Mr. Norris's claim arising from events in June

2017 is time-barred because the decision not to promote Mr. Norris was made more than 180 days before he filed his EEOC Charge on January 8, 2018.

Even if Mr. Norris's claim regarding the June 2017 decision was not time barred, Mr. Norris has not met his *prima facie* burden on this claim.  After initially posting a position for a permanent Production Manager – Faucets, Kohler decided that the position would be temporary. The undisputed record evidence is that Mr. Armstrong opted to appoint Mr. Higdon to fill the temporary position.  Mr. Norris comes forth with no record evidence that Mr. Armstrong, the decision maker in June 2017, knew about Mr. Norris's alleged protected activity.  Mr. Hnilicka was not the decisionmaker with respect to this temporary position.  Mr. Norris's two other alleged instances of protected activity occurred after Mr. Armstrong appointed Mr. Higdon.  There is no record evidence that Kohler's decision to cancel the original requisition and repost the Production Manager – Faucets position was an act of retaliation.  To the extent Mr. Norris attempts to bring retaliation claims based on these events in June 2018, the undisputed record evidence is that Mr. Norris did not apply or otherwise express interest in the permanent position.  These circumstances defeat any allegation of causation sufficient to support a retaliation claim with respect to Kohler's failure to promote him to Production Manager – Faucets.

To the extent Mr. Norris alleges that his termination was retaliatory, the undisputed record evidence establishes that there was no temporal proximity between Mr. Norris's alleged protected activity and his termination.  Further, the record evidence is that neither of the decisionmakers, Mr. Higdon and Ms. Arguello, knew about Mr. Norris's alleged protected activity at the time they decided to terminate Mr. Norris's employment.  Therefore, a reasonable jury could not find that there was a causal connection, much less the required but-for connection, between Mr. Norris's alleged protected activity and the adverse employment action he contends was taken against him.

For these reasons, Kohler is entitled to judgment as a matter of law on Mr. Norris's retaliation claims.

**IV.       Conclusion**

In sum, there is no genuine issue of material fact in dispute, and Kohler is entitled to summary judgment as a matter of law on Mr. Norris's discrimination and retaliation claims. Accordingly, the Court grants Kohler's motion for summary judgment (Dkt. No. 23).  The Court dismisses Mr. Norris's complaint with prejudice and denies his request for relief.

It is so ordered this 2nd day of November, 2020.


Kristine G. Baker
United States District Judge